## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com



USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/26/19

FIRM/AFFILIATE OFFICES
—
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-2100
DIRECT FAX
917-777-2100
EMAIL ADDRESS
DAVID.MEISTER@SKADDEN.COM

June 25, 2019

**MEMO ENDORSED**

*Via ECF*

Hon. Kimba M. Wood
United States District Judge
United States Courthouse
Southern District of New York
500 Pearl Street
New York, NY 10007

RE:  *United States v. Todd Kozel*, 19 Cr. 460 (KMW)

Dear Judge Wood:

    We respectfully submit this letter on behalf of Todd Kozel, to request a modification of one bail condition in the above-referenced matter—specifically, to request the removal of an ankle bracelet that provides electronic location monitoring ("GPS Monitoring"). The U.S. Pretrial Services Office supports the request, but the Government does not.

    Marlon Ovalles of Pretrial Services proactively reached out to defense counsel by e-mail on June 13, 2019, to inform us that there have been "no issues whatsoever" in the half year since our client's arrest, during which time he has been subject to continuous GPS Monitoring; and that Pretrial Services would consent to the removal of the ankle bracelet if an application was made.

    The Government disagrees with Pretrial Services and the defense. We had originally sought Assistant U.S. Attorney Louis Pellegrino's consent to the modification on May 8, 2019, but that request went unanswered. On June 13, we forwarded Mr. Ovalles's email to Mr. Pellegrino and raised the request to the Government again. On June 19, Mr. Pellegrino informed us that Mr. Kozel had been indicted on that date (which he said the Government believes increases the risk of flight), and that the Government would not consent to our modification request.

    For the reasons discussed below, the request should be granted.

Hon. Kimba M. Wood
June 25, 2019
Page 2

**Background**

Mr. Kozel is a 52-year-old U.S. citizen with no criminal history. He currently lives in Manhattan with his wife and their 2-year-old daughter. On December 18, 2018, Mr. Kozel returned home to the U.S. from a trip to Europe, voluntarily and in the ordinary course. He was arrested upon arrival at John F. Kennedy International Airport, pursuant to a complaint charging wire fraud, wire-fraud conspiracy, and money-laundering conspiracy (18 Mag. 10663)—the same charges in the current indictment, all of which arise out of Mr. Kozel's divorce dispute with his former wife in Florida state court, as further described below.

The bail conditions were not contested. By agreement with the Government, Mr. Kozel was ordered released by Magistrate Judge Freeman, on the following conditions: (i) $1 million personal recognizance bond secured by $1 million in cash, co-signed by his father and brother; (ii) surrender of travel documents and no new applications; (iii) travel restricted to the Southern District of New York, with travel also permitted to Pittsburgh, Pa., and Palm Springs, Calif., to visit family, if pre-approved by Pretrial Services, and with any other temporary travel requiring the consent of both the U.S. Attorney's Office and Pretrial Services; and (iv) GPS Monitoring. He satisfied all of the bail conditions on December 19, the day after his arrest, and was duly released.

Mr. Kozel has abided by the conditions of his release since the day of his release more than six months ago, without incident, as Mr. Ovalles of Pretrial Services confirmed in his June 13 e-mail. In fact, during this period Mr. Kozel has requested and received permission from Pretrial Services to travel not only to Palm Springs (once) and Pittsburgh (on three occasions), but also to Miami, Fla. (on one occasion, with the approval of the U.S. Attorney's Office), to meet with his attorneys in his ongoing divorce-related litigation. Mr. Kozel has always stayed in touch with Pretrial Services and has always returned home to New York as required.

**Argument**

In light of Mr. Kozel's background, his conduct since the date of his release more than six months ago, and the nature of the charges in this matter, we respectfully submit that GPS Monitoring falls far beyond the "least restrictive" combination of conditions that will "reasonably assure the appearance of [Mr. Kozel] as required and the safety of any other person and the community," and that the ankle bracelet should therefore be removed. 18 U.S.C. § 3142(c)(1)(B). The remaining conditions—including Mr. Kozel's surrender of travel documents, and the $1 million personal recognizance bond secured by $1 million in cash posted by his father—will

Hon. Kimba M. Wood
June 25, 2019
Page 3

more than "reasonably assure" Mr. Kozel's appearance and the safety of the community.

Although Mr. Kozel did not contest the GPS Monitoring condition on the day of the arrest, it is now abundantly clear that the condition is excessive and unjust. For one thing, the ankle bracelet is painful: It has abraded the skin on Mr. Kozel's lower leg, and it is becoming increasingly uncomfortable with the heat of summer. Furthermore, the bracelet is obstructing his and his family's sleep. For instance, apart from the discomfort that the bracelet causes Mr. Kozel, the bracelet's voice alarm sometimes blares loudly at night due to technical issues, waking his 2-year-old daughter.

The Government has never suggested that Mr. Kozel poses a risk to the community. The only question therefore is whether he is a flight risk—and, if he is, whether the conditions other than the ankle bracelet can reasonably assure his appearance in court as required.

Mr. Kozel is not a flight risk. He has strong ties to the U.S. He was born and raised in Pittsburgh, Pa., and he attended Boston College and Southern Methodist University as an undergraduate before going into the family business: oil and gas. In 1988, he and his two brothers founded Texas Keystone Inc., a Pennsylvania-based company engaged in oil and gas exploration and development. A decade later, Mr. Kozel founded and served as chief executive officer of another oil company, Gulf Keystone Petroleum Ltd., which was listed on the Alternative Investment Market of the London Stock Exchange in 2004. In that context, he worked and traveled abroad extensively; but he has always maintained ties to the U.S., where his family lives. He was married for 18 years to his now former wife, Ashley Kozel, and they had two daughters together. Ashley filed for divorce in August 2010, and she and Mr. Kozel settled their divorce in January 2012, with the daughters remaining with their mother in Florida. In October 2012, Mr. Kozel married Inga Kozel (née Buividaitė), and in November 2016 they had a daughter here in the U.S. Mr. Kozel and Inga live in Manhattan, where their daughter attends preschool. They have every intention of remaining and raising their daughter here.

The charges do not establish a risk of flight that would warrant an ankle bracelet, which is an onerous condition. If the mere existence of charges like those in the indictment provided sufficient motive to flee (as the Government appears to believe), then ankle bracelets would be commonplace in such cases. But to the contrary, defendants charged with financial frauds in this district are routinely released on bail conditions that do not include GPS Monitoring. For example, Raj Rajaratnam, the billionaire Galleon Group founder who stood accused in this district in one of the largest insider-trading cases in U.S. history, was released on conditions

Hon. Kimba M. Wood
June 25, 2019
Page 4

including travel restrictions, surrender of travel documents, and a personal recognizance bond, secured in part by cash or property—but no GPS Monitoring.[1] Likewise, Rajat Gupta, the Goldman Sachs director who was alleged to have participated in Rajaratnam's scheme, was released on a personal recognizance bond, secured by property, with travel restrictions, and with surrender of travel documents required—but without GPS Monitoring.[2] Here, too, that more onerous condition simply is not required.

Moreover, Mr. Kozel has every intention of addressing the charges at trial. Indeed, the charges are, to say the least, atypical, particularly in this district, in that they arise entirely out of Mr. Kozel's contentious divorce proceedings in Florida, such that a trial in this case will necessarily re-litigate issues from a divorce case, some of which are now on appeal in Florida. The divorce dispute was initially resolved in January 2012, through a settlement agreement in which Mr. Kozel agreed, among other things, to transfer 23 million shares of Gulf Keystone Petroleum Ltd. to his former wife, Ashley—an equity interest that was then delivered to her in four tranches, collectively worth roughly $130 million on the dates of delivery, and which she quickly liquidated with an enormous gain. Although there is scant detail in the indictment, the charges appear to resurrect a dispute following the divorce settlement, where Ashley sued Mr. Kozel in Florida state court for delivering the Gulf Keystone shares to her a few weeks past the date agreed to in the divorce settlement. The alleged fraud here is premised on Ashley's state court claim that she would have profited more had Mr. Kozel delivered the shares to her sooner, given fluctuations in the share price at the time—and the accusation in the indictment, just as Ashley contended in Sarasota County, Fla., is that Mr. Kozel schemed to deprive her of an even greater gain beyond the $130 million in value that she received. On Ashley's claim of opportunity loss, the trial court entered a $34 million judgment, which the Florida Second District Court of Appeal has stayed pending appeal. Whether the "late" delivery of the shares in question satisfied the divorce settlement agreement's cure provision or was separately actionable therefore remains in dispute in the Florida courts. In any event, now that the U.S. Attorney's Office has regrettably decided to pick up the divorce litigation, Mr. Kozel has ample basis to defend himself here in the Southern District, and he intends to do so vigorously.

In sum, any conceivable risk of flight that Mr. Kozel may pose is more than sufficiently addressed by the remaining bail conditions: surrender of travel documents, travel restrictions, and a substantial bond fully secured by cash posted by

---

[1] *United States v. Rajaratnam*, 1:09-cr-01184 (S.D.N.Y. Oct. 16, 2009).

[2] *United States v. Gupta*, 1:11-cr-00907 (S.D.N.Y. Oct. 26, 2011).

Hon. Kimba M. Wood
June 25, 2019
Page 5

Mr. Kozel's father. We are available at the Court's convenience to be heard on this matter.

**Conclusion**

For the reasons set forth above, we request that the GPS Monitoring condition of release be removed.

Respectfully submitted,

David Meister
Jocelyn E. Strauber
Daniel Merzel
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-2100

*Attorneys for Todd Kozel*

cc (by e-mail): Louis Anthony Pellegrino
Assistant U.S. Attorney

If the government is prepared to address GPS monitoring at the June 27 conference, the court will hear argument at that conference.

SO ORDERED: 6-26-19 N.Y., N.Y.

_____
KIMBA M. WOOD
U.S.D.J.