UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————

UNITED STATES OF AMERICA,                    Case No. 19-cr-00460-KMW

      Plaintiff,

vs.                                          **MOTION TO DISMISS INDICTMENT**

TODD KOZEL,

      Defendant.

———————————————————

Pursuant to Rule 12(3)(B) of the Federal Rules of Criminal Procedure,

Defendant Todd Kozel ("Defendant"), by his undersigned counsel, hereby moves

to dismiss the indictment pending against him for failure to state an offense and

other defects on grounds stated below.

The pending indictment in this case attempts to allege three crimes:

conspiracy to commit wire fraud in violation of 18 USC 1349; substantive wire

fraud in violation of 18 USC 1343; and, money laundering in violation of 18 USC

1956.  While no specific actions of Defendant, overt or otherwise, are alleged in

any count of the indictment,[1] we submit that what the Government is attempting to

allege as a crime simply is not criminal.

---

[1] The vagueness of the indictment is addressed in Defendant's motion for bill of
particulars, filed contemporaneously.

Defendant acknowledges that under the governing law applicable to motions such as this, the facts alleged in the indictment, including where applicable scienter and wrongful intent, are taken as true.  Nonetheless, this Motion properly seeks dismissal of the indictment based on purely legal grounds, specifically that the conduct alleged was not in violation of the law as alleged.  Such legal grounds are a proper basis for a motion to dismiss indictment. *United States v George*, 223 F. Supp. 2d 159 (S.D.N.Y. 2016) (dismissing indictment); *United States v. Heicklin*, 858 F. Supp. 2d 256 (S.D.N.Y. 2012) (same).

## Factual Background

This criminal case arises from divorce proceedings in Sarasota, Florida, filed in 2010.  Following two years of civil discovery and negotiation, the parties resolved their differences via a Property Settlement Agreement ("PSA"), dated January 12, 2012.  Based on the PSA, and the finding that "the parties engaged in extensive discovery in this proceeding," "the parties discovered all they wished to discover about the other's financial affairs and waived the right to any further disclosure or discovery," that "each party agreed to accept what they are to receive in accordance with" the PSA, and that its terms were "fair and equitable," a Final Judgment of Dissolution of Marriage was entered thereon the same day.  *See* Exhibit 1.  The central financial term of the PSA was that the husband (Defendant) would transfer to his wife 23 million shares of Gulf Keystone Petroleum, Ltd.

("GKP"), a British company doing business in the Middle East which Defendant had founded and of which he was CEO, or "the value thereof." The agreement contemplated transfer of the shares by January 27, 2012, but allowed for delayed delivery within an express cure period by May 1, 2012, conditioned on the payment of "additional equitable distribution payments."[2]

On the same day, January 12, 2012, an Agreed Third Amended Asset Injunction, stipulated to by both parties, dissolved earlier asset injunctions (¶ 1) pursuant to the PSA which released any other claims the spouses had against each other, while restricting Defendant from certain transfers of GKP stock other than to the wife (¶ 2-3). A true copy is Exhibit 2 hereto.

Defendant did not deliver the GKP stock to his wife by the initial due date, in January 2012, but did so within the cure period. At the time of delivery, the 23 million shares were valued at more than $100 million, although the wife made the unilateral decision to hold many of the GKP shares rather than liquidate them.[3] Acknowledging Defendant's complete compliance with the PSA and the Final Judgment, the parties agreed to release the Third Amended Asset Injunction on March 12, 2012, to quote the wife's counsel's letter to the trial court,

---

[2] The PSA was authoritatively interpreted in this regard by the appellate court which addressed the parties' dispute. *Kozel v. Kozel*, 44 Fla. L. Weekly D2865 (Fla. 2d DCA Nov. 27, 2019) (*see* Exhibit 6).
[3] While not directly material, the record indicates that the wife did liquidate some $50 million of the GKP stock.

"acknowledge[ing] that Todd has now transferred the GKP stock to Ashley that was required by the parties' property settlement agreement." *See* Exhibit 3 hereto.

Thus, as of January 12, 2012, all claims that the wife may have had against Defendant and the Gokana Trust (other than for GKP stock or its value) were **released** in the PSA, and there was no injunction against any spending, transferring, or liquidating of his assets aside from a restriction for a two-month period on certain transfers of GKP stock. By March 2012, Defendant (by the wife's admission and undisputed fact) had transferred what he was required to transfer.

Eventually, the wife changed her position and decided that she had a claim to an additional $34 million due to the two-month delay in delivery. The wife filed a claim for damages in this regard. Florida law did not allow the family court judge who handled the divorce to retain jurisdiction for post-judgment damages actions (to protect the right to jury trial, among other things), but the family court judge who had handled the divorce nonetheless erroneously assumed jurisdiction to litigate the wife's damages actions. In these unauthorized proceedings, the judge ruled in the wife's favor in an Amended Final Judgment filed September 15, 2015. *See* Exhibit 4 hereto. The two key financial aspects of that judgment were that the divorce court entered a $34 million damages judgment in favor of the wife, and ordered Defendant to pay $3.8 million into escrow to cover the wife's potential

increased tax liability based on an allegedly inaccurate "tax basis" letter Defendant had sent her. Soon thereafter, another asset freeze order was entered by the divorce judge, on September 11, 2015. *See* Exhibit 5 hereto.

On appeal, these orders were vacated because the trial court never had jurisdiction to enter them. *See* Exhibit 6 hereto. The 2015 judgment and asset freeze order had previously been stayed (a sign of likely reversal) after briefing and argument on the appeal by order of July 5, 2017. *See* Exhibit 7 hereto. As the appellate court said: "we reverse the monetary awards contained in the amended final judgment as well as the asset freeze injunction that the family court awarded to secure their payment." *Kozel v. Kozel*, 44 Fla. L. Weekly D2865 (Fla. 2d DCA Nov. 27, 2019).

## The Federal Criminal Case

Remarkably, the Southern District of New York U.S. Attorney's Office, during the pendency of the (ultimately successful) appeal, filed a criminal case based on the ex-wife's version of the disputed facts, including her disputed claims that she should have received an additional $34 million on top of the $100 million in GKP stock she agreed to receive. The pending indictment was based, by its terms, wholly on certain "Florida state court orders" in favor of the ex-wife, which were then under appeal, and which orders are now reversed.

The indictment cites only three actions of omissions by Defendant which it tries to fit into the procrustean bed of wire fraud and money laundering statutes. The following actions are alleged to be criminal:

(1)    Failing to disclose assets to the ex-wife;

(2)    Transferring certain assets in violation of court orders, including specifically purchasing a New York condominium in 2013; and,

(3)    Failure to pay amounts included in the 2015 amended judgment.

Each of the three counts is based on Defendant's alleged violation of "Florida state court orders" which required him to "disclose and not to liquidate or transfer his assets, and to transfer certain of his assets to his ex-wife."  The indictment's vague and conclusory allegations walked away from some of the detail in the earlier complaint on the same points. The key point is that the criminal charges against Defendant are based on nothing but orders in a post-divorce state court proceeding that was vacated by the appellate court as being itself *ultra vires* and unlawful *in toto*.

## The Conduct Alleged Was Never Criminal

This Court, and the federal criminal justice in general, have no interest in the dispute between Defendant and his ex-wife with regard to the distribution of their assets.  In many contexts the federal courts scrupulously avoid involvement in state court family law issues for reasons of federalism, the proper role of the federal

courts, and to avoid potential inconsistent decisions. *See*, *e.g.*, *Deem v. DiMella Deem*, 941 F. 3d 618 (2d Cir. 2019); *Overman v. United States*, 563 F. 2d 1287, 1292-93 (8th Cir. 1977). The state courts of Florida have ample means to enforce their own orders, as well as ample appellate avenues to ensure that void or invalid orders are corrected. Federal prosecutors should be reluctant to act, assisting one side in a hotly-disputed state court judgments. Federal intervention is all the more inappropriate because the undisputed facts, including those alleged in the indictment, show that Defendant did not violate any order in any respect that could even arguably be a violation of criminal law.

As the indictment alleges, and as shown by Defendant's instruction letter, Exhibit 8 hereto, the Gokana Trust was started with 3 million shares of GKP stock in 2009—years before the divorce. Whoever controlled the Gokana Trust, it cannot be disputed that it was formed before the statute of limitations period and at a time when there was no court order or other prohibition of its creation. Further, the 2012 PSA that Defendant and his ex-wife entered into (following extensive investigation into the Gokana Trust) released any claim that she may have had on the Gokana Trust.

The indictment appears to focus on a 2013 purchase by the Gokana Trust of a New York condominium in which Defendant lived. Assuming for purposes of this Motion that this entire transaction was done at his request and/or for his

benefit, at the time of the transaction there was no injunction in place, so no crime based on violation of the injunction could have been committed by its purchase as the Indictment alleges. Any defect in this transaction would be, at most, fodder for a civil claim by the beneficiaries of the Gokana Trust, and not a basis for any criminal prosecution.

As for the remaining allegations of the indictment, the Government cannot convincingly contend that non-payment of a disputed family law judgment while it was on appeal is criminal. Due to constitutional prohibitions on imprisonment, even for valid and admitted debts, criminal contempt—much less other criminal charges—cannot be used to enforce payment for judgments. *E.g.*, *Ecopatrol S.A. v Offshore Expl. & Prod. LLC*, 172 F. Supp. 3d 961, 965 (S.D.N.Y. 2016); *Kerr v. Thomas*, 2017 WL 485041 *3 (S.D.N.Y. 2017). Even more unusual is the notion that a federal district court would litigate the issue of a state court discovery violation, particularly in a case where the parties reached a settlement and released each other. In short, there is no legal "beef" to the criminal charges, and they should be dismissed.

### The Vacatur of the State Court Proceedings Precludes this Prosecution

Like other states, Florida allows the enforcement of money judgments pending appeal in the absence of a stay order. But Florida also allows the

challenge of state court orders by what would otherwise be termed "contempt" of court.

Indeed, in Florida, the "disobedience of a void order, judgment or decree, or one issued by a court without jurisdiction of the subject-matter, is not contempt." *Synchron Inc. v. Kogan*, 757 So. 2d 564, 566 (Fla. 2d DCA 2000) (internal citation omitted); *see also Ceasire v. State*, 811 So. 2d 816 (Fla. 4th DCA 2002) (no contempt for order beyond jurisdiction of court). Thus, under Florida law, "a void judgment may be attacked *at any time* because the judgment creates no binding obligation on the parties, is legally ineffective and **is a nullity**." *Fisher v. State*, 840 So. 2d 325, 331 (Fla. 5th DCA 2003).

The appellate court reviewing the *Kozel* case has now ruled—as Defendant always alleged in the case—that the Florida divorce court never had jurisdiction to even *consider* the matters before it. That lack of jurisdiction means the orders the divorce court entered were void.[4]

Beyond that jurisdictional failing in the Florida divorce court, the substantive merits of the issues in the *Kozel* post-divorce proceedings require that the criminal charges before this Court be dismissed.

---

[4] We note that the time for rehearing of the appellate ruling vacating the divorce court's post-divorce orders has not run. It is quite unlikely that the result of the carefully considered appellate decision will change and, in any case, the agreement of three neutral judges as to it confirms Defendant's good-faith basis for his view that the challenged orders were baseless.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

The essence of the facts is that Defendant and his ex-wife resolved their divorce by a property settlement, with which he fully complied. He was ultimately generous in giving his ex-wife $100 million of stock, which he did so that he could move on and start his life. As the appellate court held, and as the PSA unambiguously provides, Defendant had no obligation to his ex-wife other than what he gave her. His ex-wife's attempt to get more was contrary to the plain terms of the PSA and bereft of legal support. The Government's apparent adoption of her litigation position in its complaint and indictment is contrary to justice and the plain terms of the governing contract.

WHEREFORE, the pending indictment should be DISMISSED with prejudice.

Dated: January 23, 2019.  Respectfully submitted,

      By: _/s/Kendall Coffey_
        Kendall Coffey (Admitted pro hac vice)
        Jeffrey B. Crockett (Admitted pro hac vice)
        COFFEY BURLINGTON, P.L.
        2601 South Bayshore Drive, Penthouse
        Miami, Florida 33133
        Tel: 305-858-2900
        Fax: 305-858-5261
        kcoffey@coffeyburlington.com
        jcrockett@coffeyburlington.com
        dwilliams@coffeyburlington.com
        service@coffeyburlington.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by

Notice of Electronic Filing generated by CM/ECF, on January 23, 2020, on all

counsel or parties of record.


By: */s/Kendall Coffey*

COFFEY │ BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261