

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*One St. Andrew's Plaza*
*New York, New York 10007*

January 25, 2022

**BY ECF**

The Honorable Kimba M. Wood
United States District Judge
Southern District of New York
500 Pearl St.
New York, NY 10007

        Re:    *United States v. Todd Kozel*
                 S1 19 Cr. 460 (KMW)

Dear Judge Wood:

      The Government writes respectfully in response to the defendant's submission of a "forensic expert report" by Dr. Alfred Joshua (the "Joshua Report") in further support of its sentencing submission for defendant Todd Kozel.

      By way of background, the Government argued in its sentencing submission that the Bureau of Prisons ("BOP") is well-suited to care for the defendant notwithstanding his medical conditions. In response, the defense submitted the Joshua Report, which, in sum, opines that "[w]ith the complexity of Todd's current medical history, it places an undue burden onto medical staff at the [BOP] to coordinate the various aspects of his care in the current environment where access is severely impacted from staffing shortages at outside healthcare facilities." *See* Joshua Report at 4. Dr. Joshua further concludes that "it would be significantly safer for Todd to receive his medical care in a non-correctional setting" than in a BOP facility. *Id.* at 5.

      The Government requested that the BOP review the Joshua Report and provide a response to the opinion of Dr. Joshua that Kozel cannot or should not be treated in a BOP correctional setting. In doing so, the Government provided to the BOP all information available to the Government concerning Kozel's medical condition.[1] After reviewing these materials— which consisted of the Joshua Report, treating physicians' letters, and relevant portions of the presentence investigation report—the BOP's Northeast Region chief medical officer, Dr. Diane Sommer, M.D., responded to the Government's inquiry. *See* Exhibit A.

      In sum, Dr. Sommer's considered opinion, after reviewing all of the above materials, is that "the BOP will be able to provide appropriate care for Mr. Kozel should he be sentenced to a term of incarceration and committed to the custody of the BOP." Exhibit A at 3. In addition, Dr.

---

[1] The Government has long sought from the defense more information regarding the defendant's medical conditions, but none has been forthcoming other than the limited materials described above. The Probation Office similarly confirmed that the defendant provided little information concerning his treatment, care, and prognosis.

Sommer has provided the Court with a BOP fact sheet relating to BOP medical care, which highlights the options available for inmates requiring higher level care. *See* Exhibit B. The Government is prepared to discuss these findings further at tomorrow's sentencing hearing, should the Court have additional questions.

Lastly, the Government objects to the defense's improper use of an expert witness to insert unestablished hearsay "facts" about the defendant's medical condition into the record. Despite the Government's best efforts, the defendant has never been fully forthcoming regarding his treatments, prognosis, or medical records. Apart from brief letters from Kozel's treating physicians, no medical records have ever been provided to the Government or the Probation Office to establish a record of Kozel's conditions and treatment. Now, three days before sentencing, the defense submitted an export report that recites unsupported hearsay as the basis for its primary opinions. Thus, for the first time, the Government has learned, among other things, (1) that Kozel is not vaccinated for COVID-19, (2) that he purportedly was not vaccinated on the advice of his doctor due to his other conditions, and (3) that he "has not been found to be in remission from his cancer," Joshua Report at 3. This is all new information to the Government, and because it is inexplicably being offered via a paid expert, instead of Kozel's actual doctor, it contains a double layer of hearsay that is incapable of ready verification, particularly where the Government has never seen the defendant's medical records. The Government respectfully submits that the Court should give little, if any, weight to the new, unsupported hearsay allegations about the defendant's medical condition contained within the Joshua Report.[2]

---

[2] The Court should view the wholesale insertion of hearsay facts into the sentencing record through a purported expert witness with deep suspicion. Of course, generally speaking, under Rule 703, experts can testify to opinions based on inadmissible evidence, including hearsay, if experts in the field reasonably rely on such evidence in forming their opinions. Fed. R. Evid. 703. "The expert may not, however, simply transmit that hearsay to the jury." *United States v. Dukagjini,* 326 F.3d 45, 57 (2d Cir. 2003) ("When an expert is no longer applying his extensive experience and a reliable methodology, *Daubert* teaches that the testimony should be excluded."). "Instead, the expert must form his own opinions by "applying his extensive experience and a reliable methodology" to the inadmissible materials. *Id*. at 58. Otherwise, the expert is simply "repeating hearsay evidence without applying any expertise whatsoever." *Id*. at 58–59; *United States v. Mejia,* 545 F.3d 179, 197 (2d Cir. 2008).

The Government submits that the animating concerns underlying these principles in the context of jury trials apply here too, notwithstanding that hearsay is generally permitted at sentencing hearings. Simply put, Kozel has ready access to his own medical records and could have provided them to the Government and the Court if he wished the Court to consider them. There is no basis to ask this Court to rely on hearsay medical facts transmitted by a paid expert who was not involved in Kozel's diagnosis or treatment.

For the reasons set forth in the Government's sentencing submission, the Government submits that a Guidelines sentence is appropriate in this case and that a lower sentence, much less the defendant's requested sentence of home confinement and probation, would fail to reflect the seriousness and aggravated nature of the defendant's offense conduct, to afford general deterrence, and to promote respect for the law.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/
LOUIS A. PELLEGRINO
OLGA I. ZVEROVICH
Assistant United States Attorneys
Tel.   (212) 637-2617 / 2514
louis.pellegrino@usdoj.gov
olga.zverovich@usdoj.gov